IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY JEROME LACEY, | Case No. 2:07-cv-02640-VAP (HC) |
| Petitioner, | |
| v. | **[Petition filed on December 7, 2007]** |
| M.C. KRAMER, Warden, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS FILED BY A STATE PRISONER** |
| Respondent. | |

## I. BACKGROUND

Petitioner Billy Jerome Lacey is a state prisoner. Proceeding in <u>pro se</u>, he filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 on December 7, 2007, and an amended petition on January 22, 2008.  Respondent filed an Answer on April 23, 2008.[1]  On January 5, 2009, the action was transferred to this Court pursuant to an Order of Designation of Judge to Serve in Another District within the Ninth Circuit.

---

[1] Magistrate Judge Hollows granted Petitioner two extensions of time to file a traverse, but no traverse was ever filed.

1    For the reasons stated below, the Court DENIES the

2  Petition.

3

4  **A.   Statement of Facts**

5       **1.   The Events of October 13, 2004**

6       Sacramento Police Department officers arrested

7  Petitioner on October 13, 2004 at an "undercover buy-

8  bust" in Oak Park.  (RT at 80:23-25, 81:7-9; 148:11-17.)

9  At approximately 10:20 p.m. on that evening, Detective

10 John Jennings, in an unmarked vehicle, approached

11 Petitioner's co-defendant Kerry Duncan, who was walking

12 on foot, and asked him "What's up?"  (RT at 83:28.)

13 Duncan responded "Are you looking for it?"  (RT at 83:28-

14 84:1.)  Based on his experience, Jennings interpreted

15 this to be a reference to mean narcotics.  (RT at 84:23-

16 85:1.)  Jennings responded "Yes," and pulled over his

17 vehicle.  (RT at 85:18-23.)

18

19      Duncan then asked Jennings "what [he] was looking

20 for," and Jennings responded "a $20 piece of rock," slang

21 for a twenty-dollar piece of rock cocaine.  (RT at 85:24-

22 86:6.)  Duncan said he would "take [Jennings] to it," got

23 into Jennings's vehicle, and directed Jennings to an area

24 about two blocks away, where his partner was waiting in a

25 van.  (RT at 86:7-19.)  After driving the two blocks,

26 Jennings handed Duncan a twenty dollar bill, from a

27 series of bills with pre-recorded serial numbers, and

28

1  Duncan exited the vehicle and walked towards a van.  (RT
2  at 88:23-26, 90:5-7.)

3

4      Duncan later returned to Jennings's vehicle, said
5  "get ready for an exchange," and dropped a "small,
6  whitish rock wrapped in clear plastic" into Jennings's
7  hand through the open passenger's side window.  (RT at
8  93:5-16.)  Jennings then indicated to other officers that
9  they should "move in and take the subject in[to]
10 custody."  (RT at 93:17-24.)

11

12     Officer Erika Woolson then approached the van,
13 announced her presence, and knocked several times on the
14 driver's side window.  (RT at 145:11-20.)  She then
15 noticed movement inside the van, and saw a female, later
16 identified as Kelly Stadum.  (RT at 145:21-28.)  Woolson
17 directed Stadum to exit the vehicle through the driver's
18 side door.  (Id.)  Stadum did so, and Woolson patted her
19 down for weapons and "passed her on" to Sergeant Susan
20 Fenistra. (RT 146:18-22.)  Stadum then told Woolson that
21 her boyfriend was inside the van.  (RT at 146:23-27.)
22 Woolson first noticed a male, later identified as
23 Petitioner, standing in the back of the van, and directed
24 him to exit the van.  (RT at 147:2-9.)  A search of the
25 van led to the discovery of "torn off baggy corners,"
26 which, based on her training and experience, Woolson

27

28

identified as "the type of packaging used for narcotics."
(RT at 148:27-149:6.)

Petitioner was arrested, and placed in the back of a
police car.  (RT at 148:11-13, 158:14-16.)  Officer
Cynthia Stinson later searched Petitioner, and found
United States currency in his pants pocket and socks.
The serial number on the $20 bill found in his left sock
corresponded with one of those that had been pre-recorded
for use in the buy-bust operation that evening.  (RT at
159:20-160:19.)  When asked how he obtained that bill,
Petitioner told Stinson that "he had been at different
places that day and gotten $20 bills from those places,"
including a store and in Reno.  (RT at 161:25-162:6.)

### 2.   Jury Selection and the **Wheeler** Motion

Petitioner challenges the prosecutor's peremptory
challenge to a Black juror, "Mr. P."[2]

At voir dire, Mr. P. told the court that, while he
was in college at Humboldt State University, his roommate
and basketball teammate was arrested for marijuana
possession and spent time in jail as a result of that
arrest.  (Voir Dire RT at 15:5-19.)  He also indicated
that, "out of ten friends [he] grew up with[,] three were

_____

[2] Although the parties refer to the juror at issue by
name, the Court refers to him only by the initial of his
last name out of respect for his privacy.

4

murdered," and that his brother had been charged with grand theft auto for stealing a stock car. (Voir Dire RT at 36:12-17.)  Mr. P. later told counsel for Petitioner's co-defendant that his mother "had a drug problem" while he was growing up, and currently worked in drug abuse prevention. (Voir Dire RT at 52:27-53:3.)

In the first round of peremptory challenges, the prosecutor exercised three challenges, one of which was exercised against Mr. P.  (Voir Dire RT at 74:1-3.)

Counsel for both Petitioner and his co-defendant later brought a motion pursuant to People v. Wheeler, 22 Cal. 3d 258 (1978), ("the Wheeler motion") based on the dismissal of Mr. P. and a second Black juror "within a short period of each other."  (RT at 51:4-19.)  The trial judge found that the defendants had met their burden of establishing a prima facie case of discrimination, and thus asked the prosecutor to explain why he had exercised peremptory challenges as to the two Black jurors.[3]

---

[3] In evaluating a Wheeler motion, California state courts use the same burden-shifting analysis as that used under Batson v. Kentucky, 476 U.S. 79 (1986). "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'  Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes.  Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike (continued...)

1    The prosecutor provided a lengthy explanation as to

2  why he excused Mr. P.[4]  First, he identified Mr. P.'s

3  dreadlocks, and his own understanding that "dreadlocks

4  are somewhat associated with a Reggae culture which

5  certainly as a culture has pretty liberal views and I

6  think a lot of time promotes drug use, although maybe

7  specifically marijuana not cocaine base."  (RT at 53:19-

8  25.)  Next, the prosecutor cited Mr. P.'s attendance at

9  Humboldt State University, which he claimed had a

10  reputation as a "kind of a hot-bed for marijuana use," as

11  well as the arrest of his roommate there for the sale of

12  marijuana.  (RT at 53:36-54:3.)

13

14    The prosecutor also mentioned several aspects of Mr.

15  P.'s family history which led him to exercise a

16  peremptory challenge.  He noted that Mr. P.'s brother's

17  status as a defendant in a vehicle theft case likely led

18  him to "see[] the law work in -- pretty up close."  (RT

19  at 54:6-9.)  The prosecutor argued that the murders of

20  three of  Mr. P.'s childhood friends also served as an

21  "example[] where he's either seen the system work or not

22  work."  (RT at 54:10-12.)  He also discussed Mr. P.'s

23  _____

24    [3](...continued)
   has proved purposeful racial discrimination.'"  People v.
25  Mills, 48 Cal. 4th 158 (2010), quoting Johnson v.
   California, 545 U.S. 162, 168 (2005).

26

27    [4] The prosecutor also provided an explanation for his
   exercise of a peremptory as to the other Black juror.
28  (RT at 55:8-56:22.)  Petitioner does not challenge the
   dismissal of that juror in this Petition.

mother and noted that her drug addiction and Mr. P.'s
resulting experience and personal knowledge about
addiction could have an impact on the case, as he thought
"addiction is going to be something that the defense is
gonna try and kind of make an issue in this case.  (RT at
54:13-27.)

     The trial court found that the prosecutor
"articulated sufficient basis, variety of reasons why he
exercised peremptory challenge as to each of the two
jurors," and denied the Wheeler motion.  (RT at 58:22-
25.)

### 3.   Conviction and Sentencing

     At the conclusion  of a two-day trial, Petitioner's
counsel argued that the prosecution had not proven beyond
a reasonable doubt that Petitioner was involved with the
actual sale of the narcotics.  (RT at 200:9-202:5.)  The
prosecutor responded that, based on "common sense,"
Petitioner's possession of the pre-recorded bill could
only mean he was involved with the sale, at the least,
under a theory of aiding and abetting.  (RT at 202:7-
209:20.)

     On April 7, 2005, the jury found Petitioner and his
co-defendant each guilty of selling cocaine base, in
violation of section 11352(a) of the California Health

1   and Safety Code.  (RT at 242:5-10.)  Petitioner waived

2   his right to a jury determination as to the issue of

3   whether he had previously been convicted for a serious

4   felony, and thus qualified for a sentencing enhancement

5   under California Penal Code section 1170.12.[5]  (RT at

6   234:8-235:12.)  The trial court heard evidence on this

7   issue, and found that Petitioner's January 24, 1984

8   conviction of first degree burglary, in violation of

9   section 1192.7(c) of the California Penal Code, in the

10  Alameda County Superior Court, constituted a conviction

11  for a serious felony.  (RT at 245:23-251:14.)

12

13      The court sentenced Petitioner to a term of eight

14  years: four years for the Health and Safety Code

15  violation, doubled due to the previous serious felony

16  conviction.  (RT at 274:5-8.)

17

18  **B.   Procedural History**

19      Petitioner, represented by counsel, appealed his

20  conviction to the California Court of Appeal, Third

21  Appellate District, on May 5, 2005, challenging the trial

22  court's ruling on his <u>Wheeler</u> motion.  The Court of

23  Appeal affirmed his conviction on December 4, 2006.

24  Petitioner, still represented by counsel, then sought

25

26  _____

27      [5] Cal. Penal Code § 1170.12 is part of California's
    "Three Strikes Law," which provides for enhanced
    sentences for defendants who have previously been
28  convicted of certain felonies.

review by the California Supreme Court on January 11, 2007.  The court denied review without opinion on February 21, 2007.

While his appeal was pending in the Court of Appeal, Petitioner, acting in pro se, filed a petition for a writ of habeas corpus in that intermediate appellate court on October 4, 2006, alleging ineffective assistance of trial counsel for failure to move for severance.  The appellate court summarily denied the petition with a reference to In re Hillery, 202 Cal. App. 2d 293 (1962), on October 12, 2006.

On November 20, 2006, Petitioner filed a pro se petition for a writ of habeas corpus in the California Superior Court, Sacramento County, again on the basis of his trial counsel's failure to move for severance.  This petition was denied by written opinion on January 10, 2007.  On February 8, 2007, Petitioner filed another habeas petition stating the same basis in the Court of Appeal, which was denied summarily on March 8, 2007.  On March 21, 2007, Petitioner then filed a habeas petition in the California Supreme Court addressing this same issue, which was denied summarily on July 25, 2007.

On April 11, 2007, Petitioner filed a pro se habeas petition in the Sacramento County Superior Court,

alleging the trial court exceeded its jurisdiction and misinterpreted the California Penal Code in sentencing him.  The Superior Court denied this petition by written opinion on June 7, 2009.  On June 29, 2007, Petitioner, filed another habeas petition in the Court of Appeal on these same grounds.  The Court of Appeal summarily denied the petition on July 5, 2007.  Finally, Petitioner filed a habeas petition on these grounds in the California Supreme Court on July 23, 2007, which was denied summarily on January 3, 2008.

## C.  Petitioner's Claims

Petitioner filed this petition on December 7, 2007, and asserts the following grounds for federal habeas corpus relief:

1.  Petitioner was deprived of the effective assistance of counsel because trial counsel failed to seek severance;

2.  Petitioner was deprived of his right to a jury of his peers, based on the denial of his Wheeler/Batson motion;

3.  Petitioner was deprived of the effective assistance of counsel by appellate counsel's "failure to investigate and research the trial records for a legal defense on a non-recidivist application";

1    4.   Petitioner was deprived of his right to appeal
2    and "increase conduct alleged bey[o]nd the statutory time
3    period limitation" in his 1984 case;

4    5.   Petitioner was deprived of his right to due
5    process by the trial court's disregard of the terms of a
6    prior plea agreement;

7    6.   "Counsel's duty to inform defendant of all
8    consequence supports petitioner's claim that he was duly
9    informed of 3 years parole and the 1 to 5 years future
10   recidivist enhancement";

11   7.   Petitioner was deprived of his right to
12   effective assistance of counsel by trial counsel's
13   "failure to seek specific performance" of the terms of
14   the prior plea agreement;

15   8.   Petitioner's right not to be subjected to a Bill
16   of Attainder was violated by actions of the California
17   Legislature;

18   9.   The trial court exceeded its jurisdiction by
19   sentencing Petitioner under an invalid statute; and

20   10.  Petitioner's right to due process was violated
21   by the trial court's incorrect application of the
22   California Penal Code.

23

24                  **II. LEGAL STANDARD**

25   The Antiterrorism and Effective Death Penalty Act of
26   1996 ("AEDPA") governs the Court's review of this
27   Petition, as the Petition was filed after AEDPA's

28

effective date.  Under 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

When considering a properly exhausted claim under AEDPA, a federal court must defer to a state court's holding unless it "'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Smith v. Curry, 580 F.3d 1071, 1079 (9th Cir. 2009), quoting 28 U.S.C. §§ 2254(d)(1)-(2).

"Clearly established Federal law" is defined as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Curry, quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  "[I]t is not 'an unreasonable application of clearly established Federal law'  for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court."  Knowles v. Mirzayance, --- U.S. ---, 129 S. Ct.

1411, 1419 (2009).  However, "the Supreme Court need not have addressed an identical fact pattern to qualify as clearly established law, as 'even a general standard may be applied in an unreasonable manner.'"  <u>Jones v. Ryan</u>, 583 F.3d 626, 635 (9th Cir. 2009), <u>quoting</u> <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953 (2007).

## III.   DISCUSSION

### A.   Petitioner's First Claim

Petitioner first claims trial counsel's failure to seek severance of Petitioner's trial from that of his co-defendant constituted ineffective assistance of counsel. To establish a constitutional violation based on ineffective assistance of counsel, "a petitioner must show that: (1) his trial counsel's performance 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  <u>Jones</u>, 583 F.3d at 636, <u>quoting</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984).

    Petitioner contends that counsel had "knowledge of [a] statement made by [his] co-defendant," that should have led counsel to seek severance of the cases for trial.  (Pet. at 5.)  This claim is set out in more detail in Petitioner's state court petitions, where he

13

1   argued that, had the trials been severed, his co-

2   defendant could have testified that Petitioner did not

3   supply the drugs sold in this case.  See, e.g.,  Ct. of

4   App. Oct. 4, 2006 Pet. at 2-4.  The record contains no

5   evidence whatsoever suggesting that Petitioner's co-

6   defendant would have given any such testimony.

7

8        Even if such evidence existed, the Superior Court

9   found that any failure of trial counsel to seek severance

10  was not prejudicial.[6]  The court stated:

11       [I]t is unlikely such testimony would have been
         deemed credible given the police testimony that
12       an officer gave marked money to the co-defendant
         who then approached petitioner's van (where the
13       latter was waiting) and shortly thereafter
         returned with drugs.  In addition, a search of
14       the van yielded drug-packaging material along
         with the marked money.

15

16  (Jan. 10, 2007 Order, In re Billy Lacey, Case No.

17  06F09802, Sacramento Co. Super. Ct. at 2.)  Upon an

18  independent review of the factual record, the Court

19  concludes that the Superior Court's conclusion that any

20  failure to seek severance was not prejudicial was not an

21  unreasonable view of the facts under clearly established

22  federal law, and thus federal habeas relief is not

23  warranted.

24

25

26  _____

27       [6]  "When reviewing a state court's summary denial of
     a habeas petition, we 'look through' the summary
28   disposition to the last reasoned state court decision."
     Richter v. Hickman, 578 F.3d 944, 951 (9th Cir. 2009).

**B.   Petitioner's Second Claim**

Petitioner bases his second claim on the trial court's denial of his <u>Wheeler</u> motion, based on the District Attorney's exercise of a peremptory challenge against juror Mr. P. "for having [a] dread-lock hair style."  (Pet. at. 5.)

The Court construes a challenge to a denial of a <u>Wheeler</u> motion, alleging that a peremptory challenge was exercised based on a prohibited characteristic, as one brought under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). <u>See, e.g.</u>, <u>Gonzalez v. Brown</u>, 585 F.3d 1202, 1210 (9th Cir. 2009); <u>Paulino v. Harrison</u>, 542 F.3d 692, 694 (9th Cir. 2008).  "The <u>Batson</u> framework proceeds in three steps.  First, a defendant raising a <u>Batson</u> claim must establish a prima facie case of discrimination.  The burden of production then shifts to the prosecutor to offer race-neutral reasons for the peremptory strikes. After the prosecutor comes forward with race-neutral reasons, '[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination.'"  <u>Paulino</u>, 542 F.3d at 699, <u>quoting</u> <u>Batson</u>, 476 U.S. at 98.

Since the trial court determined that Petitioner had indeed established a <u>prima facie</u> case of discrimination, the issue is whether, given the race-neutral reasons

offered by the prosecutor, Petitioner established

purposeful discrimination.


The last reasoned state court decision addressing

Petitioner's <u>Wheeler</u> claim was the Court of Appeal's

decision on direct appeal, <u>People v. Duncan</u>, No. C049739,

2006 WL 3480375 (Cal. Ct. of App. Dec. 4, 2006).  As to

Mr. P., that court agreed with Petitioner that, "standing

alone, the prosecutor's reference to [Mr. P.'s]

dreadlocks may have sent a mixed message that suggested

consideration of his race."  Evaluating the reference to

dreadlocks in a greater context, though, the Court of

Appeal found that:

> the prosecutor's explanation for excusing [Mr.
> P.] focused on the potential impact of [Mr.
> P.'s] personal experiences with the drug culture
> on his view of the prosecution's case.  [Mr.
> P.'s] statements revealed multiple incidents of
> drug possession and addiction involving people
> he loved.  As voir dire progressed, [Mr. P.]
> interrupted to volunteer that he had 'a pretty
> good knowledge just on a lot of things to do
> with drug addiction and all that stuff. . . . My
> brother's been in it for 15, 20 years.' On this
> record, the court could decide the prosecution
> was legitimately concerned that [Mr. P.'s] life
> experience, as revealed in voir dire
> examination, would influence his ability to
> assess the case objectively.

2006 WL 3480375, at *6.


"To accept a prosecutor's stated nonracial reasons,

the court need not agree with them.  The question is not

whether the stated reason represents a sound strategic

judgment, but whether counsel's race-neutral explanation

for a peremptory challenge should be believed." <u>Kesser v. Cambra</u>, 465 F.3d 351, 359 (9th Cir. 2006) (en banc). Only one United States Supreme Court case has addressed the issue of <u>Batson</u> challenges as related to jurors' grooming or hairstyles.  In <u>Purkett v. Elem</u>, 514 U.S. 765, 769 (1995), the Court held that the exclusion of a Black male juror because "he had long, unkempt hair, a mustache, and a beard - is race neutral and satisfies the prosecution's step two burden of articulating a nondiscriminatory reason for the strike."  In doing so, the Court noted that "The wearing of beards is not a characteristic that is peculiar to any race."  <u>Id.</u>, <u>quoting</u> <u>EEOC v. Greyhound Lines, Inc.</u>, 635 F.2d 188, 190, n. 3 (3d Cir. 1980).

Here, the Court acknowledges that the specific hairstyle cited by the prosecutor may indeed be associated with one race more than another.  But "[t]he court must evaluate the record and consider each explanation within the context of the trial as a whole," <u>Kesser</u>, 465 F.3d at 360, and, given the prosecutor's explicit discussion of the association between dreadlocks and drug use, in addition to Mr. P.'s personal experiences with crime, drug use and addiction, the Court of Appeal's determination that the prosecutor "was legitimately concerned that [Mr. P.'s] life experience, as revealed in voir dire examination, would influence his ability to assess the case objectively," was not

objectively unreasonable.  Thus, the denial of the
_Wheeler_ motion does not warrant federal habeas relief.

## C.   Petitioner's Third Claim

In Petitioner's third claim he contends he was denied
effective assistance of counsel by his appellate
counsel's "failure to investigate and research the trial
records for a legal defense on a non-recidivist
application."  (Pet. at 6.)

Even construing Petitioner's seven state court habeas
petitions liberally, this argument was not "fairly
presented" to the state courts, as no petition contained
any argument of ineffective assistance by either trial or
appellate counsel in relation to the application of the
Three Strikes Law to him.  Accordingly, Petitioner's
third claim is procedurally barred.  See Cone v. Bell,
129 S. Ct. 1769, 1781 (2009) ("A claim is procedurally
barred when it has not been fairly presented to the state
courts for their initial consideration.")

Even if the third claim were not procedurally barred,
though, it would fail on the merits.  The _Strickland_
standard, discussed above, applies to Petitioner's claim
of ineffective assistance of appellate counsel.  See
Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002).
There is no dispute that Petitioner was actually
convicted of a serious felony in 1984.  See, e.g.,

18

Clerk's Supp. Trans. at 008 (1984 Abstract of Judgment).
As described more fully below, Petitioner's contentions
that the application of the Three Strikes Law was
unlawful are unsupported by statutory and case law, and
thus any failure to "investigate" these legal theories
was nonprejudicial.

D.   **Petitioner's Fourth Claim**

   Petitioner's fourth claim is that he was denied his
right to appeal his 1984 conviction in the Alameda County
Superior Court, as he was not "advised of his right to
appeal the information that in itself did not carry a
life sentence." (Pet. at 6.)  This claim is barred,
though.  "[O]nce a state conviction is no longer open to
direct or collateral attack in its own right because the
defendant failed to pursue those remedies while they were
available (or because the defendant did so
unsuccessfully), the conviction may be regarded as
conclusively valid.  If that conviction is later used to
enhance a criminal sentence, the defendant generally may
not challenge the enhanced sentence through a petition
under § 2254 on the ground that the prior conviction was
unconstitutionally obtained," except in the limited
circumstance where "the prior conviction used to enhance
the sentence was obtained where there was a failure to
appoint counsel in violation of the Sixth Amendment."
Lackawanna County Dist. Atty. v. Coss, 532 U.S. 394, 403-
04 (2001).  Since Petitioner's challenge to the 1984

conviction does not fall under this narrow exception, his fourth claim does not assert a valid ground for federal habeas relief.

**E.   Petitioner's Fifth Claim**

Next, Petitioner claims that the use of his 1984 conviction, which was the result of a plea agreement, to enhance his sentence violated the terms of the 1984 plea agreement, and thus was a violation of his right to due process.  Even construing Petitioner's state court petitions liberally, this argument was not "fairly presented" to the state courts prior to this petition, and, as such, is procedurally barred.  See Cone, 129 S. Ct. at 1781.

Even if this claim were not procedurally barred, though, it would fail on the merits.  Although Petitioner contends he was told that the collateral consequences of his plea were limited to use in the future as a "1 to 5 years," (Pet. Att. at 1), enhancement for a future felony, he has failed to show any evidence in support of this statement.  See Calloway v. White, 649 F. Supp. 2d 1048, 1055 (N.D. Cal. 2009) (petitioner bears burden to show evidence prosecutor agreed not to use conviction in subsequent proceedings).  Moreover, a prosecutor would have had no authority to make such a binding promise as to future prosecutors of other crimes.  Miles v. Runnels,

No. CIV S-04-1431 LKK EFB P, 2010 WL 489678 at *14 (E.D. Cal. Feb. 5, 2010).

The court that accepted Petitioner's plea in 1984 also had no duty to inform Petitioner of the possibility that his conviction could be used against him in the future.  "When accepting a defendant's plea, courts must inform defendants of only direct, rather than collateral, consequences of a guilty plea." Garcia v. Felker, No. CV 06-7732-RSWL(CT), 2009 WL 2776664, at *8 (C.D. Cal. Aug. 26, 2009), citing Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988).  The possibility that a defendant will be convicted of another offense in the future and receive an enhanced sentence based on the current conviction is a collateral, not direct, consequence of a plea.  Id., citing United States v. Brownlie, 915 F.2d 527, 528 (9th Cir. 1990).

Petitioner thus has failed to establish an entitlement to habeas relief based on his fifth claim.

**F.   Petitioner's Sixth Claim**

Petitioner's sixth claim is that "Counsel's duty to inform defendant of all consequence supports petitioner[']s claim that he was duly informed of 3 years parole and the 1 to 5 future recidivist enhancement." (Pet. Att. at 1.)  This does not appear to be a free-standing claim of constitutional violation, but merely

additional support for his argument that the consideration of his prior plea in his sentence was unlawful.  Accordingly, Petitioner's sixth claim fails to justify habeas relief.

## G.   Petitioner's Seventh Claim

Petitioner contends his trial counsel's performance was constitutionally deficient because he failed to seek "specific performance" of the terms of the 1984 plea agreement.  This claim was not fairly presented to the state courts in any of Petitioner's state court petitions, and thus is barred.  Casey v. Moore, 386 F.3d 896, 911 (9th Cir. 2004).  Moreover, as explained above, there is no indication that the 1984 plea agreement actually was violated by the use of the 1984 conviction in enhancing Petitioner's sentence, and there was thus no prejudice under Strickland.  Accordingly, this claim provides no basis for habeas relief.

## H.   Petitioner's Eighth Claim

According to Petitioner, his constitutional rights were violated when he received a "double sentence" by the imposition of a sentencing enhancement under the Three Strikes Law.  Petitioner argues that this sentence was an unlawful bill of attainder.  This claim does not appear to have been presented to the state court, and is thus deemed waived.  Even if Petitioner had not waived this claim, though, the Three Strikes Law "is not a bill of

attainder because it does not single anyone out." <u>Wolfe v. George</u>, 486 F.3d 1120, 1127 (9th Cir. 2007).

To the extent Petitioner's claim can be construed as a challenge to the Three Strikes Law under the Constitution's prohibitions of double jeopardy and ex post facto punishment, such a claim is without merit. <u>See</u> <u>Simpson v. Thomas</u>, 528 F.3d 685, 689-90 (9th Cir. 2008) (rejecting double jeopardy challenge to Three Strikes Law); <u>United States v. Kaluna</u>, 192 F.3d 1188, 1199 (9th Cir. 1999) (three strikes law does not violate ex post facto clause so long as statute was enacted at the time the present offense was committed). Petitioner's eighth claim thus fails to establish an entitlement to habeas relief.

## I.   **Petitioner's Ninth Claim**

Petitioner's ninth claim is that the trial court "acted in excess of its jurisdiction by imposing a sentence on petitioner under an invalid statute," by "fail[ing] to look first to the words of the statute." (Pet. Att. at 3.)  Petitioner does not specify what statute he is challenging, and only states that the "trial court failed to look first to the words of the statute before he sentence[d] prisoner to 4 years double plus 85%."  (<u>Id.</u>)  This claim "is too vague and conclusory for the Court to determine the exact nature of the claim.  Petitioner must state his claim with

sufficient specificity." <u>Courtois v. United States</u>, No.
1:06-cv-00182-OWW-TAG HC, 2007 WL 4463230 (E.D. Cal. Dec.
17, 2007).

To the extent Petitioner seeks to challenge the trial
court's interpretation or application of a state
sentencing law, "the application of state sentencing law
does not raise a federal constitutional issue" in and of
itself. <u>Bowlin v. Chrones</u>, No. CV F 06-1361 LJO DLB HC,
2008 WL 3540617, at *7 (E.D. Cal. Aug. 13, 2008). <u>See
also</u> <u>Beaty v. Stewart</u>, 303 F.3d 975, 986 (9th Cir. 2002).
Petitioner's ninth claim therefore does not justify
federal habeas relief.

**J.   Petitioner's Tenth Claim**

In his tenth claim, Petitioner argues the trial court
"erroneously imposed a sentence in excess of statutory
law and under a generic statute," by misinterpreting Cal.
Penal Code section 2933.1, which applies to the
calculation of worktime credits.  (Pet. Att. at 4.)

Petitioner's claim regarding the application of
worktime credits was considered and rejected by the
Superior Court in its June 7, 2007 written opinion, both
on the merits and because the court deemed Petitioner's
objections to sentencing errors waived based on his
failure to raise them at the time of sentencing, in his
appeal, or in his previous habeas petition.  A state

court's finding that a petitioner waived a claim bars consideration of the merits of that claim on federal habeas review.  <u>Stewart v. Smith</u>, 536 U.S. 856, 860-61 (2002).  Therefore, Petitioner's tenth claim fails to identify a viable ground for habeas relief.

## IV.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED.


Dated: <u>April 12, 2010</u>

                    VIRGINIA A. PHILLIPS
                    United States District Judge